UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL TEST SOLUTIONS, INC, <br> Plaintiff, <br> v. <br> MIPOX INTERNATIONAL CORPORATION, et al., <br> Defendants. | Case No. 16-cv-00791-RS <br><br> **ORDER DENYING MOTION TO STAY** |

## I. INTRODUCTION

Defendants Mipox Corporation, Mipox International Corporation, and MGN International, Inc. ("Mipox") move to stay this patent infringement litigation pending an *inter partes* review ("IPR") by the Patent Trial & Appeal Board ("PTAB"). The United States Patent & Trademark Office ("PTO") has not yet acted on Mipox's recently-filed petitions for IPR of the three patents at issue in this case. Nonetheless, Mipox argues that, if IPR is granted, that process would likely narrow or eliminate claims for relief asserted by plaintiff International Test Solutions, Inc. ("ITS"). For the reasons discussed below, the motion is denied without prejudice.

## II. BACKGROUND

ITS filed suit against Mipox International and MGN International on February 17, 2016 alleging infringement of U.S. Patent Nos. 8,371,316 ('316 Pat.) and 8,801,869 ('869 Pat.). On March 14, 2016, ITS amended the complaint; it dropped allegations regarding the '316 patent and added allegations of infringement of U.S. Patent Nos. 6,777,966 ('966 Pat.) and 7,202,683 ('683 Pat.). The parties exchanged infringement and invalidity contentions in June and July 2016. In December 2016, ITS sought leave to add Mipox Corporation ("Mipox Japan") as a defendant. The *Markman* hearing, initially scheduled for January 30, 2017 was continued to allow for Mipox

Japan's participation. ITS filed its claim construction brief on December 5, 2016 and its amended complaint on January 5, 2017. On February 3, 2017, Mipox filed its response to the claim construction brief and, on February 10, 2017, ITS filed its reply. Between February 10 and 16, 2017, Mipox filed a petition for IPR of each of the patents at issue. On February 17, 2017, Mipox filed the current motion to stay judicial proceedings pending disposition of the IPR. The *Markman* hearing was held on February 27, 2017, and a claims construction determination is being issued contemporaneously with this order.

### III. LEGAL STANDARD

The decision to stay a patent case pending IPR rests entirely within a court's discretion. *See Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). A court may grant a stay "in order to avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply to avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination." *Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014) (citing *MercExchange, LLC v. eBay, Inc.*, 500 F.Supp.2d 556, 563 (E.D. Va. 2007)).[1] A court, however, "is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations." *Id.*; *see also Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, No. 14-cv-00876-RS, slip op. at *3 (N.D. Cal. Mar. 30, 2015) ("A court is not required to stay patent litigation simply because parallel PTO proceedings have been instituted.") (citing *Viskase*, 261 F.3d at 1328). The party requesting the stay must show a stay is appropriate. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

Courts traditionally consider three factors in determining whether to stay a case pending IPR: "(1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Stryker*, No. 14-cv-00876-RS, slip op. at *3 (citing *Evolutionary Intelligence, LLC v.*

---

[1] District courts in the Ninth Circuit have applied the same framework in considering motions to stay pending IPR, as applied to motions to stay pending a pre-AIA reexamination. *See Robert Bosch*, 2014 WL 3107447, at *3.

*Facebook*, *Inc.*, No. C 13-4202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014)).

## IV. DISCUSSION

### A. Stage of the Case

Courts in this district favor granting stays pending reexamination where there has been "no material progress in the litigation." *Pragmatus, LLC v. Facebook, Inc.*, C–11–2168 EJD, 2011 WL 4802958, at *6–7 (N.D. Cal. Oct. 11, 2011). Where discovery has not yet been completed and a trial date has not been set, courts are more likely to issue stays to save the parties and the court the unnecessary expenditure of judicial resources. *Robert Bosch*, 2014 WL 3107447 at *4. Where, as here, defendants have been less than expedient in requesting a stay, courts have focused their inquiry on whether there has been dispositive motion practice. *See, e.g., Stryker*, slip op. at *1-*2 (granting stay where IPR petition was filed nearly one year after the initial complaint was filed and after the parties filed claim construction briefing because "no dispositive motions ha[d] been filed"); *Cypress Semiconductor Corp. v. LG Elects., Inc.*, No. 13-4034, 2014 WL 5477795, at *1-*2 (N.D. Cal. Oct. 29, 2014) (same).

Here, the stage of the case weighs against a stay. Although the pleadings have yet to settle and significant electronic discovery looms on the horizon, the parties have now argued and briefed a dispositive issue. At the claims construction hearing, Mipox challenged the definiteness of every asserted claim. The parties fully briefed (even with supplemental briefing) the dispositive issue of indefiniteness and that issue has now been decided. Accordingly, dispositive motion practice is well under way. *See Nautilus v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (holding that claim construction is dispositive when a defendant challenges claim definiteness as "a patent [claim] is invalid for indefiniteness"). Unlike in *Stryker*, Mipox did not move to continue the *Markman* hearing or make any effort to ensure that the stay motion could be heard before the parties and court expended time and resources in resolving the claim construction issues. Nor was Mipox ever "transparent about its intention to move for a stay." *Security People Inc. v. Ojmar US, LLC*, 2015 WL 3453780, at *3 (N.D. Cal. May 29, 2015). This case is thus distinguishable from the cases granting stays at later stages, including those granting last-minute

stays on the eve of claim construction.

**B.     Narrowing of Issues**

If granted, an IPR will, likely, simplify this case. *See id.*, at *3 ("the outcome of IPR could simplify the case by . . . estopping [defendant] from asserting any arguments it raised or reasonably could have raised in the IPR"). Yet, several courts in this district have recently declined to grant a stay, where, as here, "the PTAB has not yet acted on the petitions." *Hewlett-Packard Co. v. ServiceNow, Inc.*, 2015 WL 1737920, at *2 (N.D. Cal. April 9, 2015); *see also SAGE Electrochromics, Inc. v. View, Inc.*, 2015 WL 66415, at *3 (N.D. Cal. Jan. 5, 2015) ("the uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of the issues").

Mipox stresses the potential for simplified litigation by way of IPR estoppel and claim invalidation. An IPR petition, though, is not an instituted proceeding. "[T]he filing of an IPR request by itself does not simplify the issues in question and trial of the case. Ultimately, the PTO may not institute IPR proceedings." *TPK Touch Solutions, Inc v. Wintek Electro–Optics Corporation*, No. 13–CV–02218–JST, 2013 WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013). Here, Mipox is correct that an IPR, if granted, would increase the likelihood of simplification, but this argument is largely undercut by the reality that an IPR has not yet been instituted. *See SAGE*, 2015 WL 66415, at *3. Ultimately, the uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of issues. This factor thus weighs against a stay at this time. If IPR proceedings are instituted on any of the three patents at issue in this case, the potential for simplification would increase.

**C.     Undue Prejudice or Tactical Advantage**

**1.** *Tactical Advantage*

Courts expect "accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them." *Asetek Holdings, Inc. v. Cooler Master Co., Ltd*., No. 13–cv–00457–JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014). "Provided an accused infringer is diligent, delay due to preparing an IPR petition,

ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner." *Id*. Likewise, "waiting until after receiving infringement contentions to analyze the claims alleged and then filing petitions for review does not cause undue prejudice." *Cypress Semiconductor Corp.*, 2014 WL 5021100, at *4.

While Mipox filed its IPR petitions within the statutory deadline, it did so nearly a year after this lawsuit was filed, seven months after ITS's infringement contentions were served, and little more than one week before a dispositive *Markman* hearing after the issues were fully briefed. Defendants' only justification for this undue delay is that Mipox Japan, the parent company of Mipox International, was not added to this case until January 2017. This argument is not well-taken. As the parent company, Mipox Japan has likely been on notice of this suit pending against its subsidiary since February 2016. Moreover, it has certainly been on notice of ITS's intention to add it to this litigation since December 2016 before the claim construction briefing was filed. The late-addition of Mipox Japan, in January 2017, does not explain why defendants waited until after the completion of the claim construction briefing to move to stay and why they did not indicate their intent to make such a request earlier or take any action to prevent avoidable expenditure of resources. Moreover, all three defendants are represented by the same counsel, have submitted briefing in unison, and appear to be engaged in a common defense. Mipox's failure to offer any justification for the improvident timing of its stay motion weighs against a stay.

**2. *Undue Prejudice***

ITS argues that a stay would cause it substantial competitive harm, as the parties are direct competitors. Specifically, ITS claims that it does not license patents to competitors and thus, absent Mipox's conduct, ITS would be the only participant in the market. On this basis, it contends that delaying the litigation will have outsized consequences, including potential loss of market share.

Where parties are direct competitors, "the likelihood of undue prejudice to the non-moving party is heightened." *Robert Bosch*, 2014 WL 3107447, at *6. Courts in this district, however,

"require evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party." *Security People*, 2015 WL 3453780, at *5 (quotation omitted). Mipox has provided evidence that there are other companies that sell products that compete with the ITS products at issue. *See* Naggar Decl. ¶ 4. Mipox has also provided evidence that defendants have not sold any allegedly infringing products since October 2016. *See* Murata Decl. ¶ 3. If Mipox has ceased sales of the accused products, ITS's harm is mitigated. This factor standing alone, therefore, would support the issuance of a stay but as noted above, in light of the other factors at play, on balance no such stay is warranted at this juncture.

## V. CONCLUSION

Mipox has failed to show a stay is appropriate at this juncture. The motion to stay is thus denied without prejudice. Mipox may renew the motion if the PTAB grants any of its IPR petitions.

**IT IS SO ORDERED**.

Dated: April 10, 2017

_____
RICHARD SEEBORG
United States District Judge