UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL TEST SOLUTIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> MIPOX INTERNATIONAL CORPORATION, et al., <br><br> Defendants. | Case No. 16-cv-00791-RS <br><br> **ORDER GRANTING PLAINTIFF'S MOTIONS TO DISMISS DEFENDANT MIPOX CORPORATION'S SEVENTH COUNTERCLAIM AND STRIKE ITS THIRD AFFIRMATIVE DEFENSE** |

## I. INTRODUCTION

In its Amended Answer and Counterclaims, defendant Mipox Corporation ("Mipox") alleges plaintiff International Test Solutions, Inc. ("ITS") committed inequitable conduct during the prosecution of the asserted U.S. Patent No. 7,202,683 ("'683 patent"). ITS moves to dismiss Mipox's seventh counterclaim of unenforceability under Federal Rule of Civil Procedure 12(b)(6) and to strike the associated third affirmative defense of unenforceability under Rule 12(f). Mipox's allegations fail to satisfy the standard for pleading inequitable conduct set out in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). ITS's motions are thus granted. This matter was submitted without oral argument, pursuant to Civil Local Rule 7-1(b).

## II. BACKGROUND

On January 1, 2017, ITS filed a Second Amended Complaint ("SAC") adding Mipox as an additional defendant in this patent infringement lawsuit. In response, Mipox filed an Answer and Counterclaims. Therein, Mipox alleged that ITS engaged in inequitable conduct before the Patent and Trademark Office ("PTO). ITS moved to dismiss Mipox's counterclaim of inequitable conduct and to strike the related affirmative defense. Rather than respond to that motion, Mipox

1 opted to file an Amended Answer and Counterclaims. ITS now moves again to dismiss the
2 counterclaim of inequitable conduct and to strike the related affirmative defense.

In its Amended Counterclaims, Mipox alleges the named inventors of the '683 patent, Gene Humphrey, Jerry Broz, and Joyce Adams, committed inequitable conduct during the prosecution of the '683 patent. Asserted claim 1 of the '683 patent describes a method for forming a cleaning device for integrated circuit test probes. The cleaning device is formed from four elements: a cleaning pad attached to an adhesive layer, and two release liner layers protecting the exposed cleaning and adhesive surfaces. Once the top release liner layer is removed, the cleaning surface of the device has a matte finish, distinguishing it from the near mirror finishes of the surrounding integrated circuits, so the test machine may automatically detect the cleaning device when the probe is in need of cleaning. The bottom release liner layer is removed to expose the adhesive layer, so the cleaning device may be attached to a substrate which allows it to be placed into the testing machine.

Mipox avers Humphrey, Broz, and Adams failed to disclose two data sheets available to the public on ITS's website, one for Probe Polish™ and the other for Probe Clean™. The ITS data sheets both disclose cleaning devices for integrated circuit test probes composed of a cleaning pad layer attached to a polyester substrate which is in turn attached to an adhesive layer. The exposed surfaces of the cleaning layer and the adhesive layer are each protected by a liner layer.

Mipox alleges inequitable conduct two ways. First, it claims Humphrey, Broz, and Adams, being familiar with ITS products and materials, knew of the ITS data sheets when they applied for the '683 patent. Mipox avers that, given the overlap in device elements (i.e., two liner layers, a cleaning layer, and an adhesive layer), Humphrey, Broz, and Adams knew the ITS data sheets were material to the prosecution of the '683 patent, but withheld that information from the PTO. Thus, claim 1 of the '683 patent was permitted even though Humphrey, Broz, and Adams knew of prior art which anticipated the claim.

Second, Mipox alleges that Humphrey, Broz, and Adams, as named inventors, were each involved in the prosecution of '683 patent. An office action dated July 8, 2005 rejected numerous

claims in the patent application, but allowed claim 9 on the grounds that it distinguished itself from the prior art by disclosing two release liner layers and an adhesive layer. Mipox claims Humphrey, Broz, and Adams were informed of this office action and, due to their knowledge of the ITS data sheets, knew of prior art directly contradicting the examiner's stated belief, but failed to correct the examiner. Thus, claim 9, which ultimately was issued as claim 1 of the '683 patent, was permitted even though Humphrey, Broz, and Adams knew of prior art combinations which would render the claim obvious.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

A motion to dismiss for failure to state a claim shall be granted where the pleading party fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand such motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusions "are not entitled to the assumption of truth." *Id.* at 679. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (internal quotation omitted). Pleading on "information and belief is permitted . . . only if the pleadings set forth the specific facts upon which the belief is reasonably based." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009).

Federal Rule of Civil Procedure 9(b) governs the pleading of inequitable conduct. *See Exergen*, 575 F.3d at 1326. The circumstances of fraud must be pleaded "with particularity," though conditions of the mind may be alleged generally. FED. R. CIV. P. 9(b). Federal Circuit law defines the sufficiency of inequitable conduct pleading under Rule 9(b). *See Exergen*, 575 F.3d 1326. The Federal Circuit "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. The pleading must also explain "why" the withheld information is material and not cumulative. *Id.* at

1329. Facts must be alleged to give rise to a reasonable inference that "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n. 5.

B. **Motion to Strike**

Rule 12(f) allows a court to "strike from a pleading an insufficient defense." FED. R. C. P. 12(f). The function of a motion to strike under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). "Motions to strike are regarded with disfavor [] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Systems, Inc.*, 77 F. Supp. 3d 850 (N.D. Cal. 2014) (citing *Zep Solar Inc. v. Westinghouse Solar Inc.*, 2012 WL 1293873, at *1 (N.D. Cal. April 16, 2012)). "Nonetheless, the Court may properly grant motions to strike when a defense or a claim is insufficient as a matter of law." *Zep Solar*, 2012 WL 1293873, at *1 (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). "[A] court shall view the pleadings in the light most favorable to the pleader." *Zep Solar*, 2012 WL 1293873, at *1. "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *4 (D. Del. Apr. 10, 2017).

**IV. DISCUSSION**

Inequitable conduct is a powerful "equitable defense to patent infringement that, if proven, bars enforcement of a patent." *Therasense*, 649 F.3d at 1285. The doctrine enforces a patent applicant's duty of candor. Patent prosecution requires an individual to "disclose to the [PTO] all information known to that individual to be material" to the application. MPEP § 2001 (9th ed. Rev. 7.2015, Nov. 2015), 37 C.F.R. §1.56 (2012). Inequitable conduct addresses "egregious

misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence" during patent prosecution before the PTO. *Therasense*, 649 F.3d at 1287.

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with the specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n. 3. Materiality requires proof by a preponderance of the evidence of but-for materiality—i.e., the fact the PTO would not have allowed a patent claim "had it been aware of the undisclosed prior art"— or "affirmative acts of egregious misconduct" by the patentee. *Therasense*, 649 F.3d at 1291-93. Specific intent requires clear and convincing evidence that the patent applicant: (a) "knew of the reference;" (b) "knew that it was material;" and (c) "made a deliberate decision to withhold it." *Id.* at 1290. The doctrine applies only "where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim." *Id.* at 1292. "The patentee obtains no advantage from misconduct if the patent would have issued anyway." *See id.* Materiality is thus a threshold inquiry.

### A. Materiality

To plead inequitable conduct adequately, Mipox must identify the specific who, what, when, where, how and why of the material misrepresentation or omission committed before the PTO. *See Exergen*, 575 F.3d 1327. In assessing materiality, courts "give claims their broadest reasonable construction" as the PTO would have during prosecution. *See Therasense*, 649 F.3d at 1291–92. As an initial matter, Mipox's assertion that "ITS Prior Art"—including "printed publications located on the ITS website" and also "the sales, offers for sale and uses of such products" (Resp. Br. at 17)—is the subject of the alleged inequitable conduct is squarely inadequate. Only the two ITS data sheets, Probe Clean and Probe Polish, are addressed with any particularity in the pleading. As to those data sheets, ITS does not seriously contest the sufficiency of Mipox's "who" and "when" pleadings. The charges of inequitable conduct are leveled at Gene Humphrey, Jerry Broz, and Joyce Adams and the data sheets sufficiently predate

the '683 patent as to constitute prior art under 35 U.S.C. §§ 102–03. ITS does, however, contest the "what" and "where" of the allegedly material omissions.

To plead "what" and "where," MIPOX must "identify *which claims*, and *which limitations* in those claims, the withheld references are relevant to and *where in those references* the material information is found." *Exergen*, 575 F.3d at 1329 (emphasis added). A general description of the patent claim is not sufficient. *Oracle Corp v. Drug Logic, Inc.*, 807 F. Supp. 2d 885, 898 (N.D. Cal. 2011). The pleading should link particular limitations in the prior art and the patent claim. *See, e.g.*, *iLife Techs. Inc. v. AliphCom*, 2015 WL 890347, at *5 (N.D. Cal. Feb. 19, 2015) ("Exhibits A, B, and C to the Amended Answer and Counterclaim provide a detailed comparison of the relevant prior art limitations . . . and the corresponding claims in the Asserted Patents."). Mipox alleges materiality via two paths. First, Mipox contends the ITS data sheets alone both anticipate claim 1 of the '683 patent. Second, Mipox argues the ITS data sheets, in conjunction with U.S. Pat. No. 6,130,104 ("Yamasaka '104"), render claim 1 of the '683 patent obvious. Though Mipox alleges the "what" and "where" with particularity, the ITS data sheets do not anticipate or render obvious claim 1 of the '683 patent. Accordingly, Mipox's pleading does not facially establish but-for materiality of the ITS data sheets.[1]

**1. Anticipation**

Mipox contends the ITS data sheets both contain each limitation of claim 1 of the '683 patent. Claim 1 recites:

> A method for fabricating a cleaning device whose working surface is capable of being detected by a prober device, the method comprising:
>
> Forming a cleaning device having a working surface by forming a first release liner layer, forming a cleaning pad layer having a working surface on the first release liner layer, forming an adhesive layer on the cleaning pad layer, and forming a second release liner layer on the adhesive layer wherein the first release liner layer is removed to create the matte finish of the working surface; and

---

[1] While affirmative egregious misconduct is a substitute for but-for materiality in finding inequitable conduct, Mipox has not pleaded it here. *See Therasense*, 649 F.3d at 1292.

> Removing a layer from the working surface wherein the removal of the layer imparts a matte finish to the working surface of the cleaning device.

*See* '683 pat. cols. 12–13 ll. 60–6. Mipox equates the ITS data sheets to claim 1 in three steps. First, the body of the claim discloses each of the elements of the cleaning device described in claim 1. Second, the ITS data sheets disclose a cleaning pad with a matte finish as described in the final two clauses of claim 1. Third, the ITS data sheets inherently disclose a method of fabrication of the cleaning device. ITS does not contest the second step, but argues the first and third steps are fundamentally flawed.

Mipox argues the ITS data sheets disclose each element of the cleaning device produced by claim 1. Claim 1 describes two release liner layers, a cleaning pad, and an adhesive layer. '683 pat. col. 12 ll. 64–68. The ITS data sheets disclose two protective covers, a cleaning surface, an adhesive layer, and a polyester layer between the cleaning surface and adhesive layer. As ITS notes, the polyester layer is fatal to Mipox's argument. Claim 1, even under the "broadest reasonable construction," explicitly requires the adhesive layer to be formed "on the cleaning pad layer." '683 pat. col. 12 ll. 66–67; *see Therasense*, 649 F.3d at 1292. On the contrary, the ITS data sheets disclose a cleaning pad attached directly to a "polyester substrate." *See* Probe Clean at 2; *see* Probe Polish at 3. Further, contrary to Mipox's contention, the cleaning pad disclosed in claim 1 does not inherently include a polyester substrate. As the patent indicates, the "adhesive layer may then be placed against the substrate to adhere the cleaning device to the substrate." '683 pat. col. 10 ll. 32–34. Claim 1, then, discloses an adhesive layer between the cleaning pad and the substrate where the ITS data sheets disclose a substrate between the cleaning pad and the adhesive. Thus, the ITS data sheets disclose a structure that cannot have been made by the recited method in claim 1.

|   |   |   |
|---|---|---|
| 88 RELEASE LINER / 86 PAD / 84 ADHESIVE / 82 RELEASE LINER | PROTECTIVE COVER / Probe Polish™ / Polyester / Adhesive / PROTECTIVE COVER | PROTECTIVE COVER / Cleaning Polymer / Polyester / Adhesive Backing / PROTECTIVE COVER |
| **Figure 1: '683 Pat. Claim 1, Cleaning Device Cross Section** | **Figure 2: Probe Polish Cross Section** | **Figure 3: Probe Clean Cross Section** |

Mipox contends the ITS data sheets, having identified the structure of the '683 pat., "inherently disclose a method of fabricating" the device. Amend. Ans. ¶ 113. Inherency requires, however, "extrinsic evidence [to] make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citation omitted). Mipox has provided no extrinsic evidence to meet this burden. Nor, ITS argues, could it.

Even assuming all structural elements of the device produced by claim 1 are found in the ITS data sheets, the '683 patent claims a "method for fabricating," not a device. *See* '683 pat. col. 12 l. 60. In *Atlantic Thermoplastic Co., Inc. v. Faytex Corp.*, 970 F.2d 834, 841 (Fed. Cir. 1992), the Federal Circuit addressed the patentability of "product-by-process claims," special claims which "describe an invention . . . in terms of its manufacturing process." *Id.* at 844. The court emphasized claims characterized as product-by-process claim "a product, not a process," and concluded "patentability is based on the product itself." *Id.* at 845 ("the applicant [must] show that no prior art anticipate[s] or rende[rs] obvious the product defined in process terms"). The court distinguished pure process claims, though, noting an "applicant could obtain a process patent for a new, useful, and nonobvious process [for producing a] product already in the prior art . . . ." *Id.* at 844; *see id.* at 841 ("[Applicant's product] was an 'old article' . . . While a new process for producing it was patentable, the product itself could not be patented.") (citing *Cochrane v. Badische Anilin & Soda Fabrik*, 111 U.S. 293, 311 (1884)). Thus, even if the ITS data sheets anticipate every element of the cleaning device produced by claim 1 of the '683 patent, the method

of fabrication recited is not anticipated. *See id.*

### 2. Obviousness

Mipox alleges the ITS Data Sheets combined with Yamasaka '104 render claim 1 of the '683 patent obvious. During prosecution, issued claim 1 of the '683 patent was presented in U.S. Pat. App. Serial No. 10/624,750 as claim 9, which depended upon claim 8. Claim 8 recited:

> A method for fabricating a cleaning device whose working surface is capable of being detected by a prober device, the method comprising:
>
> Forming a cleaning device having a working surface; and
>
> Removing a layer from the working surface wherein the removal of the layer imparts a matte finish to the working surface of the cleaning device.

'683 Pat. Application (Excerpt) at 19, Dkt. No. 105-4. Claim 9 recited:

> The method of Claim 8, wherein forming the cleaning device further comprises forming a first release liner layer, forming a cleaning pad layer having a working surface of the first release liner layer, forming an adhesive layer on the cleaning pad layer, and forming a second release liner layer on the adhesive layer wherein the first release liner layer is removed to create the matte finish of the working surface.

*Id.* at 20. The examiner rejected claim 8 as anticipated by the Yamasaka '104 patent. *See* Office Action, U.S. Pat. App. 10/825,718, ¶ 5 (July 8, 2005), Dkt. 105-5 ("Regarding claim 8, Yamasaka discloses . . . a method for fabricating a cleaning device . . . whose working surface . . . is capable of being detected by a prober device . . . comprising . . . working surface . . . removing a layer . . . matte finish . . . ."). The examiner allowed claim 9, however, as it was distinguished from Yamasaka '104 by "a structure of a cleaning devise [comprising a] first release liner layer, a second release liner and adhesive layer." *See id.* at ¶ 8.

Mipox contends the ITS data sheets contradict the stated belief of the examiner as they contain precisely the two release liner layers and adhesive layer the examiner believed not to exist. According to Mipox, the ITS data sheets join Yamasaka '104 to render claim 1 of the '683 patent obvious. Mipox, though, assumes a device reference, joined to a method patent claim, may render obvious a method claim. As discussed above, a device claim does not anticipate a novel method

claim. *See Atlantic*, 970 F.2d at 841. Mipox provides no support for the proposition that a device disclosure is assumed into a method of formation for obviousness purposes. Absent supporting legal authority, this claim is not plausible on its face.

Though Mipox has pled the "what" and "where" of inequitable conduct with particularity, the ITS data sheets do not anticipate, nor—when combined with Yamasaka '104—render obvious, claim 1 of the '683 patent. The data sheets recite different structural elements of the cleaning device in an arrangement different from that specified in claim 1. Further, the data sheets, each disclosing a cleaning device, do not anticipate a method of fabrication for the device. Given Mipox's failure to establish facial but-for materiality of the ITS data sheets, the examiner could not have used the ITS data sheets to deny the '683 patent.

**B. Specific Intent**

Inequitable conduct requires both materiality and specific intent. To plead specific intent, Mipox must plead with particularity and facial plausibility: 1) Humphrey, Broz, and Adams' knowledge of the ITS data sheets; 2) their knowledge that the ITS data sheets were material; and 3) their deliberate decision to withhold the ITS data sheets from the PTO. *See Therasense*, 649 F.3d at 1290. Mipox fails to provide a factual basis upon which to infer Broz and Adams' knowledge of the ITS data sheets. Though Mipox does successfully plead Humphrey's knowledge of the ITS data sheets, it fails to plead a factual basis upon which reasonably to infer Humphrey's knowledge of the July 8, 2005 office action and a deliberate decision to withhold the ITS data sheets. As only the ITS data sheets are pleaded with any particularity, only those two references are addressed below.

**1. Knowledge**

Knowledge is a conclusion, not a factual allegation. A pleading should provide the "factual basis to infer [an individual] knew of the specific information." *See Exergen*, 575 F.3d at 1330. Allegations of knowledge "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Further, alleging an individual "should have known" of a reference is not enough. *Therasense*, 649 F.3d at 1290.

Broz and Adams' knowledge of the data sheets cannot reasonably be inferred. Mipox makes broad allegations tying Broz and Adams to ITS operations. It alleges Broz gave a technical talk with Humphrey regarding the Probe Polish product and Adams was the contact for ITS's worldwide sales. On this basis, ITS avers that each had "knowledge of ITS's operations and the nature of ITS's products." Amend. Ans. ¶¶ 135, 137. There are no factual allegations, however, linking Broz or Adams to the two ITS data sheets under consideration. General knowledge of ITS operations is "not sufficient to support an inference that [Broz or Adams] knew of specific material information contained in the prior art allegedly withheld." *Oracle*, 807 F. Supp. 2d at 899.

Humphrey's knowledge of the ITS data sheets, however, can be reasonably inferred from the fact Humphrey is listed as the "Technical Contact" for the ITS data sheets. *See* Probe Polish; Probe Clean. This fact is not alleged in the Amended Counterclaims, but rather asserted (and documented) in Mipox's opposition brief. Assuming Mipox could allege as much in a further amended counterclaim, the inference that Humphrey knew of the data sheets "flows logically" from that specific fact.

ITS argues Humphrey's knowledge of the substance of the ITS data sheets cannot be assumed even if he had knowledge of the data sheets' existence. *See Exergen*, 575 F.3d at 1330. Generally, "one cannot assume that an individual, who knew that a reference existed, also knew of the specific material *information* contained in that reference." *Exergen*, 575 F.3d at 1330 (emphasis in original). Courts recognize, however, a patent inventor can be assumed to have knowledge of the patent's contents. *See Nalco Co. v. Turner Designs, Inc.*, 2014 WL 645365, at *4 (N.D. Cal. Feb. 19, 2014) ("a person's knowledge of disclosures within a patent can be inferred reasonably from the fact that he was a named inventor on the patent") (citation and quotation omitted).

Humphrey's position as technical contact on the ITS data sheets is analogous to that of a patent inventor. Thus, it is reasonable to infer Humphrey is the "Technical Contact" because of his knowledge of the substance underlying the ITS data sheets. *See Nalco*, 2014 WL 645365, at

*4. Further, as Humphrey is a named inventor of the '683 patent, his knowledge of the patent's substance also reasonably follows. *See id*. Given the overlap between the '683 patent and the ITS data sheets, and the reasonable inference of Humphrey's knowledge of each, Mipox could potentially plausibly plead Humphrey's knowledge of the ITS data sheets.

As with substantive materiality, Mipox pleads two ways in which Humphrey knew of the ITS data sheets' materiality: anticipation and obviousness. For the reasons discussed above, Mipox might be able plausibly to allege Humphrey's knowledge that the ITS data sheets were anticipatory material prior art under 35 U.S.C. § 102, even though the data sheets are, in fact, not but-for material under *Therasense*. Yet, the allegation that Humphrey knew the ITS data sheets, along with Yamasaka '104, rendered the '683 patent obvious is implausible.

Mipox alleges Humphrey took part in the prosecution of the '683 patent and was informed of the office actions. It claims Humphrey, then, would have been aware of the office action of July 8, 2005 and have known the examiner allowed claim 9 because it "comprises [a] first release liner layer, a second release liner and adhesive layer." *See* Office Action, U.S. Pat. App. 10/825,718, ¶ 5 (July 8, 2005), Dkt. 105-5. Thus, Mipox contends, Humphrey was aware the ITS data sheets contradicted the examiner's belief and, along with Yamasaka '104, rendered the '683 patent claim 1 obvious.

ITS argues Humphrey's execution of ministerial documentation does not evidence close involvement in the prosecution of the '683 patent. Humphrey did sign various patent application forms between July and October of 2004. U.S. Patent App. 10/825,718, at 8, 10, 13, Dkt. 105-3. Yet, the office action in which the examiner indicated claim 9 was allowed, was dated July 8, 2005, nine months later. Further, that action was mailed to the prosecuting attorney, not to Humphrey. Office Action, U.S. Pat. App. 10/825,718 (July 8, 2005), Dkt. 105-5. Mipox cites no support for the inference that an inventor, after completing preliminary ministerial paperwork, is still considered closely involved in patent prosecution nine months later. Thus, the claim Humphrey knew the ITS data sheets to be material because they contradict the examiner's stated belief is not facially plausible and does not "flow[] logically" from the facts alleged. *Exergen*, 575

ORDER RE: MOTION TO DISMISS
CASE NO. 16-cv-00791-RS
12

F.3d at 1329 n. 5.

### 2. Deliberate Action

The final portion of specific intent is "a deliberate decision to withhold" the known material reference. *Therasense*, 649 F.3d at 1290. "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id.*; *see also iLife*, 2015 WL 890347, at *8 ("[In situations where a party relies largely on the opposing party's affirmative knowledge of material withheld information, there is a fine line between conclusory allegations and those that give rise to a plausible inference of specific intent to deceive the PTO."). Inferences, though, must be "plausible and [] flow[] logically from the facts alleged." *Exergen*, 575 F.3d at 1329 n. 5. "Moreover, an intent to deceive cannot be inferred solely based upon failure to disclose known information, even if it is highly material." *iLife*, 2015 WL 890347, at *8 (citing *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1191 (Fed. Cir. 1993)).

The thrust of Mipox's allegation is that Humphrey is a shareholder of ITS. As an experienced inventor and officer of ITS, Humphrey "understood the importance of patents and the exclusionary rights" conferred. Amend. Ans. ¶ 147. Further, Humphrey understood the commercial and financial benefits of a patent portfolio. In sum, Humphrey knew of prior art which threatened ITS's patent portfolio and, due to his pecuniary interest in ITS, withheld that material information from the PTO.

Mipox's narrative goes a bridge too far. By Mipox's logic, any individual may reasonably be suspected of fraud on behalf of his employer. Even assuming Humphrey's actual knowledge of the ITS data sheets, Mipox pleads no factual basis to explain why these ordinary economic circumstances would plausibly induce fraud on the PTO. *Contra Nalco*, 2014 WL 645365, at *4 (finding specific intent adequately pleaded where defendant alleged specific economic circumstances induced inequitable conduct). Of course, Mipox need not allege Humphrey explicitly told others "that he knew how to invalidate the patent[]." *See iLife*, 2015 WL 890347, at *7. Yet Mipox has not provided any factual allegations of misrepresentations or deliberate omissions by Humphrey. *Contra Cypress Semiconductor Corp. v. GSI Tech., Inc.*, 2014 WL

988915, at *6, 7 (N.D. Cal. Mar. 10, 2014) ("provided *facts showing* that the inventors reviewed documents that misrepresented Figures 2 and 3 and nonetheless signed declarations . . . provided *facts showing* that the prosecution attorney made misrepresentations . . .") (emphasis added). Accordingly, Mipox has failed plausibly to allege specific intent to deceive.

## V. CONCLUSION

Mipox fails adequately to plead inequitable conduct. Mipox's seventh counterclaim is deficient under Rule 9(b) and its third affirmative defense is insufficient as a matter of law. ITS data sheets are not but-for material under *Therasense*, which is a deficiency that cannot be solved by further amended pleading. Moreover, Mipox already had an opportunity to amend in response to ITS's first motion to dismiss, suggesting that further leave to amend would be futile. Thus, Mipox's seventh counterclaim is dismissed under Rule 12(b)(6) and its third affirmative defense is stricken under Rule 12(f) without leave to amend.

**IT IS SO ORDERED**.

Dated: May 16, 2017

_____
RICHARD SEEBORG
United States District Judge